IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**CARL E. WILLIAMS,**

**Plaintiff,**

**v.**

**THOMAS M. SCHRAM and**
**FOODLINER, INC., d/b/a**
**QUEST LOGISTICS,**

**Defendants.** No. 06-CV-00557-DRH

**MEMORANDUM & ORDER**

**HERNDON, Chief Judge:**

## I. Introduction

Now pending before the Court is Defendants' motion for partial summary judgment (Doc. 75) and Third-Party Defendant's motion for summary judgment (Doc. 77). Having carefully considered the arguments proffered by both sides on each of the motions, the Court **DENIES** Defendants' motion for partial summary judgment (Doc. 75) and **GRANTS** Third-Party Defendant's motion for summary judgment (Doc. 77).

## II. Background

The undisputed facts in this case are as follows. At approximately 1:14 a.m. on July 16, 2004, Plaintiff Carl Williams, the driver of a 1977 Dodge Sportsman recreational vehicle ("RV"), was stopped on the right shoulder of northbound I-57 in

1

Franklin County, Illinois. Plaintiff was sitting in the RV with Charlene Williams (co-owner of the Dodge Sportsman), Zachary Miller, and Edward Dwyer. At the same time and place, Defendant Thomas Schram was driving a commercial tractor-trailer in the course and scope of his employment with Defendant Foodliner. Around this time, Defendant Schram lost control of his tractor-trailer, left the highway, and struck the rear of Plaintiff's RV. Plaintiff and his passengers sustained injuries.

On July 14, 2006, Plaintiff filed a complaint in this Court against Thomas Schram and Foodliner, Inc. alleging that Defendants' negligence caused Plaintiff to suffer severe physical and emotional injuries. (Doc. 2.) Federal jurisdiction is based on diversity. On September 26, 2006, Defendants filed a third-party complaint for contribution against Charlene Williams. (Doc. 15.) On November 28, 2007, Plaintiff was granted leave to file an amended complaint, which he filed the following day. (Doc. 66.) The amended complaint added two counts for punitive damages against each of the defendants.

### III. Discussion

**A.   Summary Judgment Legal Standard**

Summary judgment is proper where the pleadings and affidavits, if any, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **FED. R. CIV. P. 56(c);** *Oats v. Discovery Zone*, **116 F.3d 1161, 1165 (7th Cir. 1997)** (citing *Celotex Corp. v. Catrett*, **477 U.S. 317, 322 (1986)**). The movant bears the burden of establishing the absence

of fact issues and entitlement to judgment as a matter of law. ***Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)** (citing ***Celotex*, 477 U.S. at 323**). In reviewing a summary judgment motion, the Court does not determine the truth of asserted matters, but rather decides whether there is a genuine factual issue for trial. ***Celex Group, Inc. v. Executive Gallery, Inc.*, 877 F. Supp. 1114, 1124 (N.D. Ill. 1995) (Castillo, J.)**. The Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the nonmovant. ***Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1205 (7th Cir. 1998)** (citing ***Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)**).

In response to a motion for summary judgment, the nonmovant may not simply rest on the allegations in his pleadings. Rather, she must show through specific evidence that an issue of fact remains on matters for which she bears the burden of proof at trial. ***Walker v. Shansky*, 28 F.3d 666, 670-71 (7th Cir. 1994),** *aff'd*, **51 F.3d 276** (citing ***Celotex*, 477 U.S. at 324**). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." ***Anderson*, 477 U.S. at 249-50** (citations omitted); *accord* ***Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996)**; ***Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir. 1994)**. "[Nonmovant's] own uncorroborated testimony is insufficient to defeat a motion for summary judgment." ***Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d**

3

**926, 939 (7th Cir. 1997)**. Further, the non-moving party's own subjective belief does not create a genuine issue of material fact. *Chiaramonte v. Fashion Bed Group, Inc.*, **129 F.3d 391, 401 (7th Cir. 1997)**.

**B.     Defendants' Motion for Partial Summary Judgment**

Defendants filed a motion for summary judgment on Counts III and IV of Plaintiff's amended complaint. (Doc. 75.) Defendants argue that Plaintiff has failed to show that the conduct was wilful or wanton and, therefore, is not entitled to punitive damages. Plaintiff maintains that there is sufficient evidence to suggest that Defendant Schram acted willfully, wantonly, and with reckless disregard of the rights and safety of others to warrant punitive damages. Moreover, Plaintiff contends that Defendant Foodliner condoned Plaintiff's behavior by failing to take disciplinary actions against Schram, even though Foodliner knew, Plaintiff alleges, that Schram was a danger to the public.

   **1.     *Defendant Schram***

       *a.     Legal Standard for Punitive Damages*

Federal courts sitting in diversity must look to the conflict-of-laws rules of the forum state for the applicable substantive law. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, **313 U.S. 487, 496 (1941)**. Under Illinois law, punitive or exemplary damages may be awarded when "torts are committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others."

4

***Kelsay v. Mororola, Inc.*, 74 Ill.2d 172, 186, 384 N.E.2d 353, 359 (1978)**. Punitive damages may be assessed only as a punishment and "as a warning and example to deter the defendant and others from committing like offenses in the future." ***Id.*** Furthermore, "while the measurement of punitive damages is a jury question, the preliminary question of whether the facts of a particular case justify the imposition of punitive damages is properly one of law." ***Id.***

    b.    *Analysis*

Defendants maintain that punitive damages against Defendant Schram are unwarranted because Plaintiff has failed to allege facts or present evidence to support the allegation of willful and wanton conduct on the part of Schram. Even if Schram did in fact fall asleep, as Plaintiff alleges, Defendant argues that this would prove negligence at most. Plaintiff, on the other hand, asserts that Schram had been on duty for 17 hours, a violation of federal regulations, when the accident occurred. Plaintiff further contends that after being on duty for 17 hours, Schram was fatigued and that his fatigue contributed to the accident. Plaintiff alleges that Schram knew that he was not supposed to be on duty for 17 hours and that being on duty too many hours could cause fatigue. Finally, and most important to the Court's analysis, Plaintiff claims that Defendant Schram falsified his driving log for the hours leading up to the accident and also during the preceding week.

The Court finds that a reasonable jury could legitimately infer from the evidence that Defendant Schram intentionally falsified his driving log in order to

5

circumvent federal regulations that are in place to prevent motor carrier drivers from driving in a state of fatigue. On October 26, 2007, Schram testified during a deposition that he knew it was a violation of federal regulations to stay on duty for seventeen hours, that he understood that too many hours on duty would result in fatigue, and that he knew that it is difficult to drive safely while fatigued. (Doc. 83, Ex. B, 34, 130.) If, in fact, Defendant Schram falsified his driving log despite his knowledge that driving outside the limit of federally-regulated hours of service creates a danger to other motorists on the road, then it would be reasonable for the jury to find that Plaintiff acted with reckless disregard of the rights of others. As such, the Court finds that the question of punitive damages as to Defendant Schram should be put to the jury.

### 2. *Defendant Foodliner*

#### a. *Legal Standard for Punitive Damages for Employer*

In Illinois, punitive damages may be assessed against an employer for the acts of an employee, under the following circumstances: 1) the employer authorized the doing in the manner of the act, or 2) the employee was unfit and the employer was reckless in employing him; 3) the employee was employed in a managerial capacity and was acting in the scope of employment, or 4) the employer of the employee ratified or approved the act. **See Mattyasovsky v. West Town's Bus Co., 330 N.E.2d 509, 512 (1975).**

#### b. *Federal Regulations*

Congress has granted the Federal Highway Administration ("FHWA") the

6

authority to issue regulations pertaining to commercial motor vehicle safety and to enforce those regulations. *See* **49 U.S.C. §§ 521(b), 31133(a).** Pursuant to that authority, the FHWA promulgated the Federal Motor Carrier Safety Regulations ("FMCSRs"). Relevant to this matter, the FMCSRs provide the following:

> § 390.11 Motor carrier to require observance of driver regulations.
> Whenever . . . a duty is prescribed for a driver or a prohibition is imposed upon the driver, it shall be the duty of the motor carrier to require observance of such duty or prohibition. If the motor carrier is a driver, the driver shall likewise be bound.
>
> § 395.3 Maximum driving time for property-carrying vehicles.
> Subject to the exceptions and exemptions in § 395.1:
> (a) No motor carrier shall permit or require any driver used by it to drive a property-carrying commercial motor vehicle, nor shall any such driver drive a property-carrying commercial motor vehicle:
> (1) More than 11 cumulative hours following 10 consecutive hours off duty; or
> (2) For any period after the end of the 14th hour after coming on duty following 10 consecutive hours off duty, except when a property-carrying driver complies with the provisions of § 395.1(o) or § 395.1(e)(2).
>
> § 395.8 Driver's record of duty status.
> (a) Except for a private motor carrier of passengers (nonbusiness), every motor carrier shall require every driver used by the motor carrier to record his/her duty status for each 24 hour period using the methods prescribed . . . .
> * * * *
> (e) Failure to complete the record of duty activities of this section or § 395.15, failure to preserve a record of such duty activities, or making of false reports in connection with such duty activities shall make the driver and/or the carrier liable to prosecution.

**49 C.F.R. §§ 390.11, 395.3, 395.8.**

The FHWA has developed regulatory guidance to assist motor carriers and other parties bound by the FMCSRs. *See* **Regulatory Guidance for the Federal**

**Motor Carrier Safety Regulations, 62 Fed. Reg. 16370 (1997).**

In interpretation of **49 C.F.R. § 395.3**, the FHWA provides the following guidance:

> Question 7: What is the liability of a motor carrier for hours of service violations?
> Guidance: The carrier is liable for violations of the hours of service regulations if it had or should have had the means by which to detect the violations. Liability under the FMCSRs does not depend upon actual knowledge of the violations.
>
> Question 8: Are carriers liable for the actions of their employees even though the carrier contends that it did not require or permit the violations to occur?
> Guidance: Yes. Carriers are liable for the actions of their employees. Neither intent to commit, nor actual knowledge of, a violation is a necessary element of that liability. Carriers "permit" violations of the hours of service regulations by their employees if they fail to have in place management systems that effectively prevents such violations.

**62 Fed. Reg. at 16424.** In interpretation of **49 C.F.R. § 395.8**, the regulatory guidance states:

> Question 21: What is the carrier's liability when its drivers falsify records of duty status?
> Guidance: A carrier is liable both for the actions of its drivers in submitting false documents and for its own actions in accepting false documents. Motor carriers have a duty to require drivers to observe the FMCSRs..

**62 Fed. Reg. at 16426.**

> *b.* *Analysis*

Defendant Foodliner maintains that it was not reckless in its supervision of Defendant Schram. Foodliner argues that it monitored its drivers through regular audits and provided thorough training to all of its drivers regarding safety issues.

Plaintiff, on the other hand, insists that Foodliner knew or should have known that Defendant Schram falsified his driving logs and that by failing to discipline Schram, Foodliner in effect condoned Schram's reckless behavior. Plaintiff's expert, Dennis Wylie, undertook a review of Schram's driving log book and found that Schram violated the 14-and/or 11-hour limits set out under **49 CFR 395.3** on 77 of the last 140 days prior to the accident. (Doc. 83, Ex. G, p. 46.)

If Mr. Wylie's review is correct, Schram was in violation of the federal regulations more than half the time in the 140 days leading up to the accident. Based on this, the Court finds that a reasonable inference could be drawn that Defendant Foodliner turned a blind-eye to Schram's violations of the FMCSRs governing driver hours of service and maintenance of a driving log book. In addition, guidance to the FMCSRs expressly provides that "[c]arriers 'permit' violations of the hours of service regulations by their employees if they fail to have in place management systems that effectively prevent such violations." **62 Fed. Reg. at 16424.** The Court believes, as a matter of law, that there is sufficient evidence for a jury to reasonably find that Foodliner should be assessed punitive damages. Therefore, Defendants' motion for partial summary judgment is **DENIED**. (Doc. 75.)

C.   **Third-Party Defendant's Motion for Summary**

Third-Party Plaintiffs Schram and Foodliner filed a Third-Party complaint asserting a negligence claim against Third-Party Defendant Charlene Williams and seeking contribution from Charlene Williams if Plaintiff Carl Williams

9

prevails. Specifically, Third-Party Plaintiffs claim that Charlene Williams carelessly and negligently failed to prevent the RV from running out of fuel and subsequently failed to properly place warning triangles or flares behind the RV or to ensure that the hazard lights were illuminated.

Third-Party Defendant Charlene Williams argues that she is entitled to summary judgment because 1) under Illinois law, she was under no duty to ensure that warning devices were displayed; 2) she did not breach any duty to display hazard lights, since the lights of the RV were on at the time of the accident; and 3) her negligence, if any, was not the proximate cause of Plaintiff's injuries. Third-Party Plaintiffs' response seems to correctly concede (by its silence on the issue) that Charlene Williams did not have a duty to ensure that warning devices were displayed. However, Third-Party Plaintiffs maintain that Charlene Williams did have a duty to ensure that the hazard lights were illuminated. Furthermore, they maintain that summary judgment would not be appropriate on this issue because there is a material factual dispute regarding whether the hazard lights were illuminated.

### 1. *Legal Standard*

In Illinois, to recover in negligence, a plaintiff must prove that 1) the defendant owed a duty of care; 2) the defendant breached that duty; and 3) the defendants' breach proximately caused plaintiff's injuries. ***Ward v. K mart Corp.*, 136 Ill.2d 132, 140 (1990)**. Charlene Williams was a co-owner of the RV driven by Plaintiff Carl Williams. Third-Party Plaintiffs seem to suggest that as a co-owner,

Charlene Williams has a heightened duty as compared to nonowner-passengers. Under Illinois law, this is not true. Illinois has adopted the rule that "an owner-passenger should only be liable for his own negligence, such as where he knows of a danger and fails to take available precautions, and should not have that of the driver imputed to him." ***Seeger v. Canale*, 241 Ill.App.3d 177, 183, 607 N.E.2d 687, 692 (Ill.App. 2 Dist., 1993)**.

As to the question of what duty, if any, is created by statute, the Illinois Rules of the Road provide in pertinent part:

> (a) During the period from sunset to sunrise every motorcycle or motor vehicle which is standing on any highway shall display a parking light on the front and at the rear of the same.

**625 ILCS 5/12-203**. Illinois statutory law creates no other duty relevant to the precise facts of this case.

### 2. *No Duty Breached*

Third-Party Defendant Williams asserts that the only duty that could possibly attach to her was the requirement under **625 ILCS 5/12-203** to ensure that parking lights are displayed on the front and at the rear of a vehicle which is standing on the highway. Williams maintains that the parking lights were illuminated on the RV. In support of her contention, she cites the deposition testimony of Plaintiff Carl Williams. During a deposition held on August 16, 2005, Carl Williams testified: "I got out to look and make sure all the lights were working and see where we – try to see where we was. . . . I walked all the way around and turned on all the lights. . ."

11

(Doc. 77, Ex. B, p. 68.)

In response, Third-Party Plaintiffs assert that there are genuinely disputed issues of fact that render summary judgment improper at this stage. Specifically, Third-Party Plaintiffs point to testimony given by Third-Party Plaintiff Thomas Schram wherein he stated that he did not remember seeing any lights on the camper and that there were no flashing lights activated on the RV.

In fact, Schram offered conflicting testimony on this issue. During a deposition taken in another case, but regarding this same accident, Schram testified that the RV did not have any lights or flashers on. (Doc. 85, Ex. A, p. 33.) However, in a subsequent deposition, Schram equivocated. Schram first testified that he could not recall whether or not he saw the camper or motor home before the impact occurred. (Doc. 85, Ex. B, p. 77.) Next, the following exchange took place:

> Q: And if Carl Williams were to testify in this case that the camper's lights were on at the time the accident happened, would you have any reason to disagree with him based on your recollection?
> ***
> A: I don't remember seeing any lights on that camper.
> ***
> Q: Okay. So if you didn't see the camper or motor home before the impact occurred, then am I correct in understanding that you can't say one way or the other whether the camper or motor home had its lights on at the time the impact happened?
> ***
> A: No, I can't remember.
> Q: Well, that wasn't my question. . . . If you can't recall whether you even saw the camper of the motor home before the impact occurred, is it fair to say that you're unable to say whether the camper or motor home had its lights on at the time the impact happened?
> ***
> A: I can't remember seeing the lights on that camper.

| | |
|---|---|
| Q: | You said you can't remember seeing the lights on? |
| A: | I don't think there was any on. |
| Q: | Okay. |
| A: | And I don't think there was no flashers. |
| Q: | Are you positive as we sit here today that the camper or motor home didn't have any lights on when you first saw it? |

\*\*\*

| | |
|---|---|
| A: | No, I'm not positive. |
| Q: | Okay. Why are you not positive about that? |

\*\*\*

| | |
|---|---|
| A: | I can't remember. |
| Q: | Okay. Is it possible the camper or motor home did have some lights on? |

\*\*\*

| | |
|---|---|
| A: | I can't remember. |

(Doc. 85, Ex. B, p. 77-80.)

Although the Court must resolve factual disputes in favor of the non-moving party, the Court need not throw up its hand at the slightest whiff of a factual dispute. It must be a *genuine* dispute. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." ***Anderson*, 477 U.S. at 249.** In other words, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* **at 251**. Third-Party Plaintiff Schram has offered nothing more than his own uncorroborated and contradictory testimony. When pushed, Schram testified that he could not remember whether or not the lights were on. It would be completely unreasonable for the jury to hold Third-Party Defendant Williams liable based on Schram's faulty memory. As such, the Court finds that there is no genuine dispute as to any material fact. Third-Party Plaintiffs have failed to offer sufficient evidence to dispute Plaintiff

Carl Williams' testimony that the lights on the RV were illuminated. Having determined that there is no genuine factual dispute that the lights were illuminated, the Court finds that Third-Party Defendant Williams did not breach any duty she might have had towards Third-Party Plaintiffs. The Court need not determine whether Charlene Williams would have been negligent had the lights not been on.

### 3. *No Proximate Cause*

However, assuming arguendo that the lights were not on (and that the Court found that Charlene Williams was negligent by not ensuring that the lights were on), the Court believes Ms. Williams would still prevail. Third-Party Plaintiffs must show not only a duty and a breach of that duty, but also that the injury was proximately caused by the breach. "Proximate cause can only be established when there is reasonable certainty that the defendant's acts caused the injury." **Henderson v. Beckman Texaco, 213 Ill.App.3d 1054, 1060-61 (Ill.App. 5 Dist., 1991)**. In cases with similar facts, courts have reached different results regarding the question of proximate cause. **Compare Smith v. Armor Plus Co., Inc., 248 Ill.App.3d 831, 840 (Ill.App. 2 Dist., 1993) (holding that "the present case created a triable issue of material fact as to whether defendants' actions in abandoning the truck on the shoulder during serious weather conditions without the use of statutorily required warning devices constituted a proximate cause of the collision.")** *with* **Henderson, 213 Ill.App.3d at 1061 (finding that "there is nothing in the record to support any inference that defendants' alleged failure**

**to turn on flashers or warning lights or to place flares or other warning devices contributed in any way to the collision which caused the decedent's death.")** The Court finds the reasoning in *Henderson* more persuasive. In this case, the Court agrees that Williams' alleged failure to ensure that the lights on the RV were illuminated - even if true - did not cause the accident. Schram admitted during his deposition that he should have been able to see the RV, regardless of whether its lights were illuminated. (Doc. 77, Ex. A, p. 142-43.)

Having found that Charlene Williams did not breach any duty and that even if she had that her conduct was not the proximate cause of Carl Williams' injuries, the Court **GRANTS** Third-Party Defendant Williams' motion for summary judgment.

### IV. Conclusion

For the foregoing reasons, the Court **DENIES** Defendants' motion for partial summary judgment (Doc. 75) and **GRANTS** Third-Party Defendant's motion for summary judgment (Doc. 77). All claims against Third-Party Defendant Williams are dismissed with prejudice. At the close of the case, clerk to enter judgment accordingly.

**IT IS SO ORDERED.**

Signed this 15th day of July, 2008.

/s/    *DavidRHerndon*
**United States District Court
Chief Judge**